# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ICON HEALTH & FITNESS, INC. | § § § | |
| v. | § | 1:17-CV-356-LY |
| | § § | |
| RICHARD KELLEY | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:  THE HONORABLE LEE YEAKEL
     UNITED STATES DISTRICT JUDGE

Before the Court are Defendants' Motion to Dismiss Claims 1 Through 6 of Plaintiff's Complaint Under Rule 12(b)(6) (Dkt. No. 11); and Plaintiff's Memorandum in Opposition (Dkt. No. 14). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

### I.  GENERAL BACKGROUND

Plaintiff Icon Health & Fitness, Inc. (Icon) brings this suit against Richard Kelley asserting claims for federal and Texas trademark infringement, federal trademark dilution, Texas common law palming off, Lanham Act unfair competition/false designation of origin, and violations of the Anticybersquatting Consumer Protection Act (ACPA).

Icon is the owner of four registrations in the word mark, IFIT, and a registration for the domain name, www.ifit.com. According to Icon, it began using the IFIT mark in 1996 or 1997 to market a line of fitness products. A couple years later, Icon also began using the domain name www.ifit.com to provide video and audio workouts to be used with the IFIT products, which it

registered in 2001. Icon then submitted its first registration for the IFIT mark in 2002. Since that time, Icon alleges that it has consistently used and marketed the IFIT brand and website, submitting three additional registrations to expand the brand to products and services including, for example, fitness and exercise equipment, mobile apps, and bands and clips. Icon claims that it has invested resources to promote the mark through a variety of marketing initiatives across TV channels, social media, Internet ads, and email listservs. Icon's products bearing the IFIT mark are sold in a number of large retailers across the United States, including Walmart, Sears, and Academy Sports, and are sold through online retailers, such as Walmart.com and Amazon.com, as well as its own website.

In 2005, Kelley, an author and entrepreneur, registered the domain names www.iFitCoach.com and www.iFitnessCoach.com to promote and sell his fitness and nutrition books. In 2016, Kelley was contacted by a representative of Icon, who offered to purchase the domain names. Kelley refused, saying that the websites were being revamped, but that he intended to continue using them to promote his books. He also noted that Apple was in the business of buying domain names similar to his. In early 2017, Kelley also submitted a registration for the domain name www.iFitCoachPlus.com. Kelley hired an attorney, who exchanged a number of emails with Icon's respresentative, and ultimately offered to sell the iFitCoach domain for $200,000. The negotiations ended in April, and Icon filed suit alleging various trademark and unfair competition claims. Kelley now moves to dismiss Icon's claims.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as

true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ANALYSIS

Kelley has challenged each of Icon's claims, arguing that Icon has failed to adequately plead its causes of action. First, Kelley argues that Icon's claim under the Anti-Cybersquatting Act fails because Icon has not sufficiently pled the element of confusing similarity. Similarly, Kelley contends that the facts alleged do not support a finding of a likelihood of confusion for Icon's federal and Texas trademark infringement claims. Next, Kelley asserts that Icon has not alleged a misleading statement as required for its false advertising claim. Kelley then challenges Icon's trademark dilution claim because Icon has not pled ownership in a famous mark. Finally, Kelley argues that both Icon's assertion of secondary meaning and likelihood of confusion for its Texas common law palming off claim are not adequately pled.

#### A. Likelihood of Confusion

First, Kelley moves to dismiss Icon's claims for cybersquatting and Texas and federal trademark infringement. For each of these claims, Kelley solely contends that Icon has not pled a

3

likelihood of confusion.[1] Courts look to eight "digits of confusion" to determine whether there is a likelihood of confusion. *Bd. of Supervisors for La. State Univ. Ag. & Mech. College v. Smack Apparel, Co.*, 550F.3d 465, 478 (5th Cir. 2008); *cf. Elvis Presley Enters., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998) (noting that the determination for likelihood of confusion is the same under federal and Texas law). These include:

> (1) the type of mark allegedly infringed, (2) the similarity between the two marks, (3) the similarity of the products or services, (4) the identity of retail outlets and purchasers, (5) the identity of the advertising media used, (6) the defendant's intent, . . . (7) any evidence of actual confusion, [and] (8) the degree of care exercised by potential purchasers.

*Id.* "No single factor is dispositive, and a finding of a likelihood of confusion need not be supported by a majority of the factors." *Id.* Kelley argues that Icon's claims were "conclusory and mere recitations" of the elements for likelihood of confusion and "devoid of further factual enhancement." Dkt. No. 11 at 5. In particular, he argues that Icon provided no factual basis for the similarity of trade channels, consumers, and the marks.

Assessing the likelihood of confusion is "typically a question of fact." *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009). In this analysis, "the absence or presence of any one factor ordinarily is not dispositive." *American Rice, Inc. v. Producers Rice Mill, Inc.*, 518 F.3d 321, 329 (5th Cir. 2008). Thus, the test at the motion to dismiss stage is whether the complaint's allegations of a likelihood of confusion are plausible*;* it is not necessary at this stage to

---

[1] In addition to the other elements—which Kelley does not challenge—a claim under the Anti-Cybersquatting Act requires a finding that defendant's domain name is identical or confusingly similar. *See Bulbs 4 East Side Inc. v. Ricks*, 199 F. Supp. 3d 1151, 1167 (S.D. Tex. 2016). Courts look to the factors identified in the likelihood of confusion analysis to determine whether the domain name is confusingly similar. *See, e.g.*, *Victoria's Cyber Secret Ltd. Partnership v. V Secret Catalogue, Inc.*, 161 F. Supp. 2d 1339, 1350 (S.D. Fla. 2001). Thus, the discussion for this element is the same as that under the trademark infringement claims, and can be dealt with simultaneously.

weigh each digit of confusion.[2] It is clear from the complaint that Icon has alleged a plausible likelihood of confusion. First, Icon has sufficiently alleged a similarity of the marks. Kelley's domain names include Icon's word mark, "ifit." The inclusion of an additional term does not, by itself, preclude a finding of similarity. *See Continental Connector Corp. v. Continental Specialties Corp.*, 492 F. Supp. 1088, 1095 (D. Conn. 1979) ("Courts have repeatedly held that the confusion created by use of the same word as a primary element in a trademark is not counteracted by the addition of another term."); *see also V Secret Catalogue*, 161 F. Supp. 2d at 1351-52. Icon also provides significant detail of the history of the use of the mark, the nature of the products and services the mark represents, the markets in which the products are sold, and the media outlets used to promote the mark. Icon further provides a history of Kelley's use of his domain names and his efforts to sell the domain names, which provide support for Icon's assertions of bad faith. Icon has therefore pled a sufficient factual basis to support a finding of a likelihood of confusion, and its claims for cybersquatting and federal and Texas trademark infringement should not be dismissed.

**B.  False Advertising**

Next, Kelley argues that Icon has failed to adequately allege a claim under the Lanham Act for false advertising. In the complaint, Icon asserts a claim for "Federal Unfair Competition/False Designation of Origin/False Advertising" under 15 U.S.C. § 1125(a). Kelley argues that Icon has

---

[2]*See John Crane Prod. Sols., Inc. v. R2R & D, LLC*, 2012 WL 1571080, at *3 (N.D. Tex. May 4, 2012) (noting that it is not necessary to assess each digit of confusion in determining a 12(b)(6) motion); *Liquid Manna, LLC v. GLN Global Light Network, LLC*, 2015 WL 4068623, at *4 (W.D. Tex. July 2, 2015) (denying a motion to dismiss because the plaintiff had sufficiently alleged a similar mark and similar products); *cf. Just Add Water, Inc. v. Everything But Water, Inc.*, 2005 WL 1206874, at *4 (N.D. Tex. May 18, 2005) (finding that allegations that "Defendant's marks are likely to cause confusion because of 'various acts' conducted by Defendant and that the marks are 'confusingly similar'" were insufficient to plead a likelihood of confusion).

not alleged a misleading statement, as required for a claim for false advertising. *See* Dkt. No. 11 at 9. However, Icon states that it never intended to assert a claim for false advertising, but rather is asserting only a claim for unfair competition/false designation of origin, which is governed by § 1125(a)(1)(A). *See* Dkt. No. 14 at 12.[3] As Kelley does not challenge the elements for an unfair competition claim, this argument fails.[4]

**C.     Famous Mark**

Kelley also challenges Icon's claim for trademark dilution. Here, Kelley claims that Icon has not adequately pled that its mark is "famous" as defined under the statute. "[A] mark is famous if it is widely recognized by the general consuming public of the United States as a designation of the source of the goods or services of the mark's owner." 15 U.S.C. § 1125(c)(2)(A). The threshold to show a famous mark is high, and only reaches "those marks with such powerful consumer associations that even non-competing uses can impinge on their value." *Bd. of Regents, Univ. of Tex. Sys. v. KST Elec., Ltd.*, 550 F. Supp. 2d 657, 674 (W.D. Tex. 2008). Such marks include DuPont, Kodak, and Buick. *YETI Coolers, LLC v. Imagen Brands, LLC*, 2017 WL 2199012, at *8 (W.D. Tex. May 18, 2017). Moreover, the plaintiff asserting a dilution claim must show that the mark was famous prior to any allegedly infringing uses. *See id.* (citing 15 U.S.C. § 125(c)(1)).

---

[3]This confusion likely could have been avoided by specifying in the Complaint that Icon only intended to assert a claim under § 1125(a)(1)(A), rather than just "§ 1125(a)"—which includes false advertising. Moreover, in the Complaint, Icon alleges that "Kelley's unauthorized use . . . constitutes . . . [a] misleading description and representation of fact." Dkt. No. 1 at 22. This could be read to intend a claim for false advertising. However, Icon has responded that it does not intend to assert this claim. Therefore, the Court need not address the merits of Kelley's argument.

[4] Kelley does assert that Icon "present[s] a mere possibility of a likelihood of confusion." Dkt. No. 11 at 10. This element is required to prove a claim for unfair competition. However, as discussed in the previous section, Icon has sufficiently pled a likelihood of confusion.

Kelley first asserts that Icon has failed to allege sufficient facts to show that its mark is famous. Though the threshold is high for proving a famous mark, at the motion to dismiss stage, "a complaint need only 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Iqbal*, 556 U.S. at 678). Here, Icon has alleged that it first used the mark in 1999 and has since expended significant resources to promote the brand through media campaigns across a range of outlets, such as television, the internet, email, and social media to market to a broad spectrum of people. It has further pled that its products bearing the marks are sold in retailers—both online and brick and mortar—across the country. This description of the methods used to promote the mark and its sales for over eighteen years is sufficient to allege fame. *See YETI Coolers*, 2017 WL 2199012, at *8-9 ("In sum, while the burden of proving fame is insurmountable for all but the most famous marks, Plaintiff is not required to prove its case at this time.").

Kelley also argues that Icon has not adequately pled that Icon's marks were famous prior to his use of the domain names. Here, Kelley claims that Icon never explains when its five separately registered trademarks became famous. Dkt. No. 11 at 12. He points out that Icon "has grouped all of its marks into a single grouping . . . and has asserted that all of the marks in said grouping are famous despite each of the marks covering different goods and/or services, and having first use dates ranging from February of 1999 to October 1, 2012." *Id.* at 13. Thus, Kelley insists that Icon "fails to state any facts that support that said marks acquired fame . . . prior to Defendant's first use of the Defendant's domain names." *Id.* Icon disagrees with this characterization, arguing that the different registrations were for the same mark, and merely indicated an intent to expand the range of goods and services represented by the mark. *See* Dkt. No. 15 at 15.

The fact that Icon's use of the mark has continued expanding to different services and products over the years—including in the years after Kelley began using the domain names—is clearly relevant to the question of whether Icon's mark was famous prior to Kelley's use. However, Kelley's argument appears to confuse the "mark" with its "registrations." Each registration does not result in a different mark that must be found famous. *See, e.g.*, *Edible Arrangements, LLC v. Provide Commerce, Inc.*, 2016 Wl 4074121, at *1 (D. Conn. July 29, 2016) (considering a mark with multiple registrations as a single mark); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.,* 2004 WL 2158120, at *4 (S.D.N.Y. Sep. 28, 2004) (noting that the Starbucks "mark" was the "subject of multiple registrations"); *ACI Int'l v. Adidas-Salomon AG*, 359 F. Supp. 2d 918, 919–20 (C.D. Cal. 2005) (noting that Adidas owned multiple registrations "for the Three-Stripe *Mark*" that "*is* well-known and famous") (emphasis added). Instead, Icon is required to show that the IFIT word mark is famous. As noted above, it has sufficiently alleged that it has promoted and sold products and services associated with the mark since 1999 and that it has consistently expanded its use. Kelley began using the domain names in 2005. It is therefore plausible that the mark was famous prior to Kelley's first use. This is all that is required at this stage, and Kelley's argument fails.

**D.**     **Texas Common Law Palming Off**

Finally, Kelley asserts that Icon has not alleged a claim for Texas common law palming off.[5] A claim for unfair competition under Texas law "requires a showing that a plaintiff's use of its trade name has acquired a secondary meaning, and that the similarity of use of the mark or name is such

---

[5] Palming off (or passing off) is one of three causes of action included under the umbrella of unfair competition. *See Conceal City, L.L.C. v. Looper Law Enforcement*, LLC, 917 F. Supp. 2d 611, 618 (N.D. Tex. 2013).

that the defendant's use would be likely to confuse the public." *Philip Morris USA, Inc. v. Lee*, 481 F. Supp. 2d 742, 750 (W.D. Tex. 2006) (quoting *Graham v. Mary Kay Inc.*, 25 S.W.3d 749, 754 (Tex. App.—Houston [14th Dist.] 2000, pet. denied) (internal quotations omitted)). Kelley challenges both elements of this claim. However, as discussed previously, Icon has pled a plausible claim of likelihood of confusion. Thus, the only remaining argument is whether Icon has sufficiently pled that its IFIT mark has attained secondary meaning.

Here, Kelley asserts that "Plaintiff has failed to provide any factual support for its assertion that 'ICON's IFIT Marks have acquired secondary meaning.'" Dkt. No. 11 at 16. "Secondary meaning occurs when, in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself." *Smack Apparel*, 550 F.3d at 476 (internal quotations omitted). As with the likelihood of confusion analysis, courts employ a multi-factor test to determine whether a mark has acquired secondary meaning. *Id.* These factors include:

> (1) length and manner of use of the mark or trade dress, (2) volume of sales, (3) amount and manner of advertising, (4) nature of the use of the mark or trade dress in newspapers or magazines, (5) consumer-survey evidence, (6) direct consumer testimony, and (7) the defendant's intent in copying the trade dress.

*Pebble Beach Co. v. Tour 18 I Ltd.*, 155 F.3d 526, 541 (5th Cir. 1998). The determination of whether a mark has acquired secondary meaning is a question of fact. *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 234 (5th Cir. 2010). As noted in the fame analysis, Icon has alleged that it has promoted the mark since 1999 across a broad range of outlets, that it has sold its products across the United States in both brick-and-mortar and online stores, and that Kelley used his domain names in bad faith. As such, Icon has alleged a plausible basis to find that its IFIT marks have acquired secondary meaning, and its claim for palming off should not be dismissed.

9

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendants' Motion to Dismiss Claims 1 Through 6 of Plaintiff's Complaint Under Rule 12(b)(6) (Dkt. No. 11).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 27th day of December, 2017.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE