# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| ICON HEALTH & FITNESS, INC. | § § § | |
| v. | § | 1:17-CV-356-LY |
| RICHARD KELLEY | § § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO:    THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 28); Defendant's Response (Dkt. No. 32); and Plaintiff's Reply (Dkt. No. 36). The District Court referred the above motion to the undersigned Magistrate Judge for report and recommendation pursuant to 28 U.S.C. §636(b)(1)(A), FED. R. CIV. P. 72, and Rule 1(c) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Icon Health & Fitness, Inc. (Icon) brings this suit against Richard Kelley asserting claims for federal and Texas trademark infringement, federal trademark dilution, Texas common law palming off, Lanham Act unfair competition/false designation of origin, and violations of the Anticybersquatting Consumer Protection Act (ACPA). Kelley also asserted counterclaims for federal and common law unfair competition, common law trademark infringement, fraudulent misrepresentation, and cancellation of Icon's marks for genericness and functionality. Now, Icon moves to dismiss all but the fraudulent misrepresentation claim.

Icon is the owner of four registrations in the word mark, IFIT, and a registration for the domain name, www.ifit.com. According to Icon, it began using the IFIT mark in 1996 or 1997 to

market a line of fitness products. A couple years later, Icon also began using the domain name www.ifit.com to provide video and audio workouts to be used with the IFIT products, which it registered in 2001. Icon then submitted its first registration for the IFIT mark in 2002. Since that time, Icon alleges that it has consistently used and marketed the IFIT brand and website, submitting three additional registrations to expand the brand to products and services including, for example, fitness and exercise equipment, mobile apps, and bands and clips. Then, in 2017, Icon began using iFitCoach for its subscription service in conjunction with its IFIT products.

In 2005, Kelley, an author and entrepreneur, registered the domain names www.iFitCoach.com and www.iFitnessCoach.com to promote and sell his fitness and nutrition books. According to Kelley, he began using these marks in 2011 to sell fitness-based teaching and coaching materials, including books, ebooks, DVDs, and online videos. However, in 2016, Kelley was contacted by a representative of Icon, who offered to purchase the domain names. Kelley refused, saying that the websites were being revamped, but that he intended to continue using them to promote his books. He also noted that Apple was in the business of buying domain names similar to his. Finally, in early 2017, Kelley also submitted a registration for the domain name www.iFitCoachPlus.com. Kelley hired an attorney, who exchanged a number of emails with Icon's representative, and ultimately offered to sell the iFitCoach domain for $200,000. The negotiations ended in April, and Icon filed suit alleging various trademark and unfair competition claims. Kelley filed his counterclaims, asserting that Icon infringed on his iFitCoach.com and iFitnessCoach.com marks when it began marketing its iFitCoach products in early 2017. Icon now moves to dismiss.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

## III. ANALYSIS

Icon first moves to dismiss Kelley's claims for federal and common law unfair competition and common law trademark, contending that Kelley is not the senior user in the iFitCoach and iFitnessCoach marks. Icon also moves to dismiss Kelley's claim for cancellation of Icon's marks as generic contending as a matter of law that the marks are not generic. Finally, Icon asserts that Kelley's claim for cancellation of its marks as functional misapplies the law and should be dismissed. The Court will address each argument in turn.

A.    **Seniority and Likelihood of Confusion**

First, Icon moves to dismiss Kelley's claims for trademark infringement and unfair competition. Essentially, this argument claims that Icon is the senior user of the IFIT and IFIT.com marks "with nationwide priority and exclusive right to use those marks in commerce." Dkt. No. 28 at 1. Because this exclusive right also gives Icon the right to prevent any use of "confusingly similar" marks, Icon alleges that Kelley's use of iFitCoach and iFitnessCoach infringes on its marks. This is the basis for its own claims against Kelley. However, Icon takes this point a step further. It now alleges that because it has argued that the iFitCoach and iFitnessCoach marks are confusingly similar to its IFIT and IFIT.com marks, that it is the senior user, and Kelley cannot now bring his own trademark infringement and unfair competition claims for Icon's later use of the iFitCoach mark.

While this may in fact be proven true, Icon's argument assumes too much at this point. Icon, in making this claim, is assuming that Kelley's marks are confusingly similar to its own, a point that has yet to be proven. In fact, as discussed at length in this Court's previous Report and Recommendation, the likelihood of confusion analysis is "typically a question of fact." Dkt. No. 18 at 4 (quoting *Xtreme Lashes, LLC v. Xtended Beauty, Inc.*, 576 F.3d 221, 227 (5th Cir. 2009)). Though the Court found that Icon had "sufficiently *alleged* a similarity of the marks," it did not decide that Kelley's iFitCoach and iFitnessCoach marks were confusingly similar. *Id.* at 5 (emphasis added). Icon, in its reply, states that the likelihood of confusion analysis "is irrelevant because . . . Kelley's counterclaims specifically allege that there is a likelihood of confusion between Kelly's marks and ICON's marks." Dkt. No. 36 at 4. While Kelley does allege a likelihood of confusion,

4

it is not with Icon's IFIT marks, but rather with Icon's use of iFitCoach beginning in 2017.[1] Thus, Kelley has not admitted a likelihood of confusion between his own marks and those in which Icon would have priority. As such, the likelihood of confusion argument is well taken.

Nor do the cases cited by Icon mandate dismissal of Kelley's claims. Icon points to a line of cases which found that the addition of another word, such as "coach", to the plaintiff's mark does not prevent a finding of likelihood of confusion. *See Elvis Presley Ents., Inc. v. Capece*, 141 F.3d 188, 201–02 (5th Cir. 1998); *Marathon Mfg. Co. v. Enerlite Prod. Corp.*, 767 F.2d 214, 219 (5th Cir. 1985); *Virgin Ent. Ltd. v. Nawab*, 335 F.3d 141, 149 (2d Cir. 2003). However, none of these cases were decided at the motion to dismiss stage, but were rather decided after evidence on *all* of the factors had been presented. Thus, the courts in those cases were weighing the "eight digits of confusion," of which the similarity of the marks is only one factor. *Bd. of Supervisors for La. State Univ. Ag. & Mech. College v. Smack Apparel, Co.*, 550 F.3d 465, 478 (5th Cir. 2008) ("No single factor is dispositive, and a finding of likelihood of confusion need not be supported by a majority of factors.").[2] Though the addition of the word "coach" is certainly one point to consider in the

---

[1] Importantly, Kelley is only claiming that Icon's use of the iFitCoach mark in 2017 infringes on his own trademark. He is not alleging that IFIT and IFIT.com marks are confusingly similar. Exactly the opposite. Icon conflates the two marks, in an attempt to establish priority. While it is clear that Icon used both the IFIT and IFIT.com marks prior to Kelley's use of the iFitCoach and iFitnessCoach marks—Kelley does not dispute this—Kelley has alleged that Icon did not begin using iFitCoach until 2017, six years after Kelley began using his marks. Thus, to show priority, Icon would *have* to show that the IFIT marks were confusingly similar to Kelley's marks—which has not yet been proven.

[2] *Elvis Presley Ents.*, 141 F.3d at 202 ("The connotation of the marks are similar, and this digit of confusion therefore weighs in favor of a likelihood of confusion."); *Marathon Mfg.*, 767 F.2d at 222 (affirming the lower court's decision on cross motions for summary judgment that the marks were confusingly similar, taking into consideration the design, product similarities, and evidence of actual confusion); *Virgin Ent.*, 335 F.3d at 149 (determining on appeal that the plaintiff, on a motion for preliminary injunction, had established a likelihood of confusion after considering all of the

likelihood of confusion analysis, it is by no means dispositive. As such, the Court cannot say, as a matter of law, that Icon is the senior user in the iFitCoach and iFitnessCoach marks. Rather, Kelley has sufficiently pled his unfair competition and trademark infringement claims, and they should not be dismissed.³

**B.     Generic**

Icon next moves to dismiss Kelley's claim for cancellation of Icon's IFIT marks as generic. Registration by the USPTO provides "prima facie evidence of the validity of [a] registered mark." 15 U.S.C. § 1115(a). Marks are classified into categories of increasing distinctiveness: (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992). "The latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection." *Id.* At the other end of the spectrum, generic marks are not registrable as trademarks. *Id.* Descriptive marks are not "inherently distinctive" but may be registered if they have "become distinctive of the applicant's goods in commerce." *Id.* Notably, a court may cancel a registered mark if it is found to be either generic, or descriptive and lacking secondary meaning. *Xtreme Lashes*, 576 F.3d at 232 (5th Cir. 2009) (citations omitted). Importantly for these purposes, whether a mark is

---

factors); *see also Nikon Inc. v. Ikon Corp.*, 987 F.2d 91, 94 (2d Cir. 1993) (affirming on appeal the lower court's ruling after a bench trial); *Bd. of Regents of the Univ. of Houston Sys. v. Houston Coll. of Law, Inc.*, 214 F. Supp. 3d 573, 587 (S.D. Tex. 2016) (weighing all eight factors on a motion for preliminary injunction).

³Icon also includes a section in its Motion to Dismiss claiming that Kelley's use of the iFitCoach and iFitnessCoach marks are "part of his unlawful domain name cybersquatting scheme." Dkt. No. 28 at 10.   Once again, this is an allegation which has yet to be proven, and cannot be the basis for dismissal of Kelley's claims.

generic, and whether a mark has gained secondary meaning are both questions of fact. *Id.* at 227; *Smack Apparel Co.*, 550 F.3d at 474.

A mark is generic when it "identifies a genus or class of things or services, of which a particular item in question is merely a member." *Union Nat. Bank of Tex., Laredo, Tex. v. Union Nat. Bank of Tex., Austin, Tex.*, 909 F.2d 839, 845 (5th Cir. 1990). It must "connote[] the basic nature of articles or services rather than the more individualized characteristics of a particular product." *Amazing Spaces, Inc. v. Metro Mini Storage*, 608 F.3d 225, 241 (5th Cir. 2010); *see also Nola Spice Designs, LLC v. Haydel Ents., Inc.*, 783 F.3d 527, 538–39 (5th Cir. 2015) ("[T]he term 'Mardi Gras Bead Dog' describes a characteristic of Haydel's products, and not the products themselves."). "The test for genericness is whether the public perceives the term primarily as the designation of the article." *Soc'y of Fin. Exam'rs v. Nat'l Ass'n of Certified Fraud Exam'rs, Inc.*, 41 F.3d 223, 227 (5th Cir. 1995). Marks such as aspirin and cellophane have been found to be generic. *Amazing Spaces*, 608 F.3d at 241.

Here, Kelley contends that the IFIT and IFIT.com marks are generic. In particular, Kelley argues that the:

> term "i" as used for products and services using the Internet, as a delivery and fulfillment mechanism, or as used in association with a personal device[], is a generic term. . . . Similarly, the term "Fit" as used for products and services in the health and fitness industries is a generic term.

Dkt. No. 20 at 43. Though typically a fact question, Kelley's pleadings on this claim are clearly implausible. Kelley argues that the marks are "integrally tied to fitness utilizing the internet and/or mobile devices." Dkt. No. 32 at 12. He further goes on to cite cases which found that the use of "i"

7

or "e" as a prefix are commonly used to describe Internet-related products and services.[4] However, in one of the cases cited, the board found that the term was *descriptive*, rather than generic. *See In re Zanova, Inc.*, 59 U.S.P.Q.2d 1300 (TTAB 2001) (finding the term ITOOL merely descriptive). Moreover, in *In re International Business Machines Corp.,* 81 U.S.P.Q.2d 1677, the board noted that the prefix "e", when combined with another "generic term SERVER" was generic. In that opinion, the term "server" was found to be generic for "computer network access products." *Id.* Here, it is clear beyond cavil that "Fit" does not identify an entire class of fitness-related equipment and apps. Rather, at most, it describes a characteristic of the product. Thus, looking at the mark as a whole, it is obvious that IFIT is not generic for the services for which it is offered. Kelley's claim should therefore be dismissed.

## C.  Functionality

Finally, Icon argues that Kelley's counterclaim to cancel Icon's marks as functional should be dismissed. The Supreme Court has recognized that product features that are functional cannot be protected as trade dress. *Qualitex Co. v. Jacobson Prods. Co., Inc.*, 514 U.S. 159, 165 (1995). There are two tests to determine whether a product feature is functional. First, the traditional test asks whether a feature is "essential to the use or purpose of the article or if it affects the cost or quality of an article." *Eppendorf-Netheler-Hinz GMBH v. Ritter GMBH*, 289 F.3d 351, 355 (5th Cir. 2002). Second, the competitive necessity test, finds that a feature is functional "if the exclusive use of the

---

[4]Icon argues that Kelley's separation of the terms is improper. Rather, the mark must be looked at in its entirety. While this is true, *Assoc. of Co-op Members, Inc. v. Farmland Indus., Inc.*, 684 F.2d 1134, 1140 (5th Cir. 1982), it does not preclude this Court from considering the "meanings of the component words in determining the meaning of the mark as a whole." *Camowraps, LLC v. Quantum Digital Ventures, LLC*, 74 F. Supp. 3d 730, 736 (E.D. La. 2015) (quoting *Liquid Controls Corp. v. Liquid Control Corp.*, 802 F.2d 934, 938 (7th Cir. 1986)).

feature would put competitors at a significant non-reputation-related disadvantage." *Id.* at 356 (internal quotations omitted). The purpose of the functionality doctrine is to "prevent[] trademark law, which seeks to promote competition by protecting a firm's reputation, from instead inhibiting legitimate competition by allowing a producer to control a useful feature." *Id.* at 355 (quoting *Qualitex*, 514 U.S. at 164). It therefore helps to "preserve the distinction between the realms of trademark law and patent law." *Rosetta Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 161 (4th Cir. 2012).

However, the functionality doctrine has no application to the current case. *See Stroller v. Sutech U.S.A., Inc.*, 199 F. App'x 954, 958 (Fed. Cir. 2006) ("While an applicant may not obtain trademark protection for structural features of a product or its packaging if those features are purely functional, that principle has no bearing on an application to register a word mark."). Words have been found to be functional in limited circumstances, namely when they perform a function other than mere source-identification. *See, e.g.*, *Sega Ents. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1532 (9th Cir. 1993) (finding the initialization code functional where it "serves the function of regulating access to the Genesis III"); *Compaq Comp. Corp. v. Procom Tech., Inc.*, 908 F. Supp. 1409, 1423 (S.D. Tex. 1995) ("The use of the word Compaq in the vendor ID position provides this compatibility."). However, here, the word marks serve no function. *See Rosetta Stone*, 676 F.3d at 162 (finding that "use of the words 'Rosetta Stone' is not essential for the functioning of its language-learning products, which would function no differently if Rosetta Stone had branded its product 'SPHINX' instead . . . ."); *Autodesk, Inc. v. Dassault Systemes SolidWorks Corp.*, 685 F. Supp. 2d 1001, 1008 (N.D. Cal. 2009) ("Indeed, it is not apparent how a word mark could be

9

essential to the use or purpose of an article or affect its cost or quality."). Nor does Kelley point to a function of the mark, aside from identifying the services. *See* Dkt. No. 20 at 45 (stating that the term "i" and "Fit" were functional for "*articulating* the use" for which the services are offered). Instead, this argument seems to be an extension of Kelley's claim that the IFIT marks are generic, rather than a standalone claim. Moreover, in his response, Kelley failed to answer this argument at all. Accordingly, this claim should be dismissed.

## IV. RECOMMENDATION

Based upon the foregoing, the undersigned Magistrate Judge **RECOMMENDS** that the District Court **GRANT IN PART** and **DENY IN PART** Plaintiff's Motion to Dismiss Defendant's Counterclaims (Dkt. No. 28). In particular, the Court **RECOMMENDS** that the District Court **DISMISS** Kelley's counterclaims for cancellation of Icon's registrations as generic and functional and **DENY** all further relief requested.

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from

appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

SIGNED this 7th day of September, 2018.

							_____
							ANDREW W. AUSTIN
							UNITED STATES MAGISTRATE JUDGE